UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 09-256-GWU


MARLAN H. ROSE,                                                          PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                            DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.


## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.     Is the claimant currently engaged in substantial gainful activity?
       If so, the claimant is not disabled and the claim is denied.

2.     If the claimant is not currently engaged in substantial gainful
       activity, does he have any "severe" impairment or combination
       of impairments--i.e., any impairments significantly limiting his
       physical or mental ability to do basic work activities?  If not, a
       finding of non-disability is made and the claim is denied.

1

3.      The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Marlan H. Rose, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative and discogenic disorders of the spine (status post fusion), borderline intellectual functioning, and a depressive disorder.  (Tr. 25).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Rose retained the residual functional capacity to perform a significant number of jobs existing in the economy, and accordingly was not entitled to benefits.  (Tr. 30-7).  The Appeals Council declined to review, and this action followed.

At the most recent administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 47 at the time of his alleged onset date and 51 at the time of the hearing, "marginal" education, and lack of transferrable job skills, could perform any work if he were limited to "light" level exertion, with the option of sitting and standing, and also had the following non-exertional limitations.  He: (1) could not crawl or climb ladders, ropes, or scaffolds; (2) could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; (3) needed to avoid concentrated exposure to vibration; (4) was limited to simple instructions and required an object-

focused work environment with no more than casual and occasional interaction with the public, coworkers, and supervisors; and (5) could adapt to routine changes in a simple work setting where no work-related reading was an essential job element. (Tr. 648-9).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 649).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff raises three specific issues on appeal.

First, the plaintiff argues that he meets the Commissioner's Listing of Impairment (LOI) 12.05C, which provides for a finding of disability where an individual has a valid verbal, performance, or full scale IQ score of 70 or below and an additional and significant work-related limitation of functioning.  There are three sets of IQ scores in the transcript.  Dr. Stewart Cooke, a psychologist, administered the Kaufman Brief Intelligence Test (K-BIT) in February, 2005, and reported that Mr. Rose had a verbal score of 73, a non-verbal score of 55, and a composite IQ of 63. Dr. Cooke did not directly say that these scores were valid or invalid, but commented that the non-verbal score "seems to be low given his past work

history."[1]  Dr. Cooke did not diagnose mental retardation or borderline intellectual

functioning.  (Tr. 202).  Annette Freel, a licensed psychological associate under the

supervision of Licensed Clinical Psychologist Christopher A. Catt, examined Mr.

Rose in January, 2005, and reported a verbal IQ of 66, a performance IQ of 62, and

a full scale IQ of 61.  (Tr. 249).  However, she also stated that Mr. Rose was

irritable, did not put forth a good effort, and the results appeared to be invalid.  (Id.).

Finally, staff members in the employ of Psychiatrist Robert Granacher administered

the K-BIT in June, 2005 and, like Dr. Cooke, obtained a verbal score of 73, a non-

verbal score of 55, and a composite IQ of 63.  (Tr. 338).  Dr. Granacher stated that

there was a statistically significant difference between the verbal and the non-verbal

scores, without actually specifying the significance of the difference.  (Id.).  Certain

other test instruments administered were interpreted as showing that the plaintiff

was exaggerating memory impairment symptoms, and the MMPI-2 was considered

to be most likely invalid due to an over virtuous self-presentation.  (Tr. 336-7).  At

the same time, two other standardized tests showed no motivational deficit.  (Tr.

336-7).  Dr. Granacher did diagnose mild mental retardation.  (Tr. 339).

The ALJ found that the plaintiff had borderline intellectual functioning based

on his work history and his inconsistent effort on testing.  (Tr. 28).  He also noted

_____

[1]Mr. Rose described a work history in automotive maintenance, among other
activities, which included working on agricultural machinery and tractor-trailer trucks, and
welding.  (E.g., Tr. 91, 591-3).

that treatment notes from the Adanta Mental Health Counseling Service covering several months did not mention any intellectual deficits.  (E.g., Tr. 343-52, 364-6).

While the plaintiff argues that the evidence shows valid IQ scores in the 60s, the court concludes that given all of the qualifications surrounding the IQ scores, a reasonable finder of fact could have concluded that there was no clear evidence of mental retardation.  Clearly, the Freel scores were declared by the examiner to be invalid.  Dr. Cooke also opined that Mr. Rose's non-verbal score seemed low given his work history, and Dr. Granacher's remarks could be interpreted as raising a question of the validity of the scores.  Moreover, it was reasonable to bolster this conclusion by the fact that treating mental health sources apparently did not consider the plaintiff's level of intellectual functioning to be out of the ordinary.

Another issue raised by the plaintiff, his level of literacy, is more problematical.  The plaintiff testified that he had only attended school through the third grade, was in Special Education, and could not read or write.  (Tr. 583-4).  He stated that he got his driver's license by an oral test, and although he could drive, he did not need to follow road signs because he knew his way.  (Tr. 584-5).  Dr. Cooke administered the Wide Range Achievement Test (WRAT), which showed that Mr. Rose could read only at the kindergarten level.  (Tr. 201).  There was no indication of malingering.  Annette Freel also obtained a kindergarten level reading score on the WRAT but said that this was considered to be lower than the plaintiff's

10

actual ability due to poor effort.  (Tr. 250).  Finally, Dr. Granacher's WRAT testing also showed kindergarten level reading, with no evidence of malingering, and the psychiatrist concluded that Mr. Rose was illiterate.  (Tr. 336-40).  The VE testified that the plaintiff's jobs as a welder and farm equipment mechanic had high levels of specific vocational preparation requiring from one to two years to learn, but he apparently had no difficulty in accepting that the plaintiff "just learned on the job as he went."  (Tr. 647-8).

The ALJ did not specifically address the question of illiteracy in the most recent decision.  In an earlier decision, vacated on other grounds by the Appeals Council, the ALJ stated, in assessing Mr. Rose's credibility, that his claim of being unable to read even road signs eroded his credibility "as reading the road signs is an important part of the test for a driver's license."  (Tr. 487).  This would imply, however, that an individual could not pass an oral driver's license test without being able to read, which is clearly not the case.  Otherwise, the two administrative decisions are silent on any reasoning for declining to accept the plaintiff's allegation of illiteracy.  It is a particularly confusing issue to a subsequent reviewer since the ALJ made a finding that the plaintiff had a "marginal" education (sixth grade or less), but then specified in the hypothetical question that he would not be able to read. (Tr. 36, 648).  As the plaintiff points out, the issue of illiteracy is highly vocationally significant.  Under the Commissioner's Medical-Vocational Guidelines, a person

11

aged 50 to 54 who is limited to light level exertion, and who is illiterate and has no transferrable skills is considered to be disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 202.00(d).  Accordingly, a remand will be required for further findings of fact regarding the plaintiff's literacy.[2]

The plaintiff also notes that the ALJ rejected physical limitations by one of the plaintiff's treating neurosurgical specialists, Dr. Richard Lingreen.  Dr. Lingreen limited the plaintiff to lifting no more than three to five pounds, to less than full-time standing and walking, and also noted numerous additional non-exertional restrictions.  (Tr. 391).  There was also evidence from other sources limiting the plaintiff to less than the "light" level of exertion found by the ALJ, including an April, 2004 opinion from Mr. Rose's treating family physician at the time, Dr. James Wilson (Tr. 150) and a May, 2005 opinion, apparently from this source, indicating that he was "permanently disabled" (Tr. 241).  A consultative examiner, Dr. Raymond Santucci, examined the plaintiff on two occasions.  In March, 2006, he opined that Mr. Rose could perform light level exertion with restrictions generally consistent with the hypothetical question, although he limited the plaintiff to walking

---

[2]The plaintiff also asserts that Rule 201.17 of the Mental-Vocational Guidelines provides that an individual aged 45 to 49 is disabled if he is illiterate and has unskilled work experience.  While this is correct, it is not clear that the Rule would apply to the plaintiff since it was found that he had skilled to semi-skilled, albeit non-transferrable, work experience.  Rule 201.19 states that an individual with a "limited or less" education and non-transferrable skills is not disabled at the sedentary level.  Since the issue has not been fully briefed, the matter can be addressed on remand.

no more than four hours without rest, no more than "frequently" reaching above shoulder level, and performing no work around unprotected heights. (Tr. 324). Dr. Santucci submitted an apparently superseding opinion after a repeat January 27, 2007 examination, in which he limited the plaintiff to lifting no more than 10 pounds occasionally, along with the previous non-exertional restrictions. (Tr. 401). Another one-time examiner, Dr. William J. Lester, an orthopedist, had somewhat confusingly limited the plaintiff to "light duty, sedentary, no lifting [greater than] 10 lbs., no pushing or pulling [greater than] 20 lbs., limit bending" following an October, 2004 examination. Apart from the opinions of state agency physicians who reviewed the evidence before Dr. Lingreen and Dr. Santucci's reports were available (Tr. 253-9, 263-8), the ALJ's functional capacity appears to be in excess of all of the examining sources, with the possible exception of Dr. Santucci's initial report. The ALJ provided a lengthy discussion for making his residual functional capacity finding, based to a considerable extent on the belief that there was not enough objective evidence to support greater restrictions, and because Dr. Lingreen's report appeared to be based on MRI findings prior to the plaintiff's fusion surgery. (Tr. 33). Whatever else may be said about this finding, the plaintiff submitted a substantial amount of additional evidence to the Appeals Council, including additional CT and MRI scans of the lumbar spine and further neurosurgical treatment. (Tr. 515-77). Since the case is being remanded for other grounds, the new evidence may be

considered along with any other subsequent evidence in determining the plaintiff's physical limitations.

The decision will be remanded for further consideration.

This the 24th day of March, 2010.

**Signed By:**

_**G. Wix Unthank**_

**United States Senior Judge**